IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                        Case No. 04-40105-02-SAC

LUYOBOV  TKACHENKO,

Defendant.

MEMORANDUM AND ORDER

Defendant and her co-defendant are charged with one count of
possession of methamphetamine with intent to deliver.  This case comes before the
court on defendant's motion to suppress all evidence seized from the vehicle in
which she was riding on July 27, 2004 or derived from its search, including
statements she made following her arrest.  (Dk. 15).  The government opposes the
motion.  (Dk. 17).  After reviewing the briefs, the evidence submitted at and after

1

the evidentiary hearing held July 28, 2005,[1] as well as the post-hearing

memorandum, the court is ready to rule.

**Facts**

      At about 3:03 p.m. on July 27, 2004, Officer Coffman of the Junction

City, Kansas police force stopped a Volvo with California license plates for

traveling 75 miles per hour in a 70 mile per hour speed zone on Interstate 70.

Defendant Luyobov Tkachenko was a passenger in the vehicle driven by co-

defendant Avraham Bagola.  Officer Coffman asked for documentation, and

Bagola produced a valid Pennsylvania driver's license.  He also produced papers

showing the car was registered to a Californian named Rati Fiss or Fiss Rati and

was insured in the name of someone whose name the officer could not recall at the

hearing, but was not Bagola, Tkachenko, or Fiss/Rati.  Bagola said he had recently

purchased the vehicle in California, but had no registration or insurance papers in

his own name for the vehicle.

      When Officer Coffman asked their destination, Bagola gave him three

---

[1]By agreement of the parties, a video tape of the car stop was submitted after the hearing for the court's consideration in this case.  In accordance with the court's representation to the parties during the hearing, and given the lack of objection by the parties to the admission of this tape, the court admits it as evidence.

separate destinations: Kansas City, St. Louis, and Philadelphia.  Bagola appeared to

the officer to be nervous and jumpy.  Defendant Tkachenko ignored the officer,

avoided eye contact with him, and focused instead upon playing a video game on

her cell phone.  This initial contact lasted between two and three minutes.

Officer Coffman decided to issue a warning ticket, returned to his

patrol car, and called a drug dog team to come to the scene of the stop.  Because

the paperwork showed that Rati Fiss was the proper owner, Officer Coffman was

concerned whether Bagola was in fact the owner of the car, as Bagola claimed.

Approximately seven minutes passed while Officer Coffman checked the license,

registration, and insurance information through his dispatcher, and ran NCIC and

III checks on Bagola.  After receiving confirmation, he returned to the vehicle.

During this second contact with Bagola, Officer Coffman asked for

proof of the vehicle's purchase in California.  Bagola produced a hand-written

document showing that the vehicle had been purchased by Bagola for $6,000 cash

from a seller who was neither Fiss nor the insurance holder, but some other person.

Bagola also gave the officer a copy of what Bagola represented to be the seller's

California driver's license.  That contact took less than one minute.

The officer then returned to his patrol vehicle and checked the

seller's driver's licence through dispatch, confirming that he was not wanted and

that his identification was not false.  He then completed a warning citation for speeding and, after approximately five minutes in his patrol car, again contacted Bagola.

Officer Coffman asked Bagola to exit his vehicle and walk to the front of the officer's patrol car.  At that point, approximately sixteen minutes after the initial contact, Officer Rains arrived with his drug dog and began an exterior sniff of the vehicle.  Officer Coffman noticed that Bagola became nervous and that his attention focused upon the dog rather than upon Officer Coffman.  Officer Coffman returned Bagola's documentation, explained the warning citation for speeding, and informed defendant that he could not legally operate the vehicle in Kansas because the registration and insurance were not his.  At about that time, and less than one minute after the dog arrived, the dog barked and Officer Coffman understood that the dog had alerted.  Soon thereafter, at approximately 3:19 p.m., Officer Coffman presented the warning ticket to Bagola, who signed it and was given a copy of it.

Officer Coffman then spoke to this defendant before searching the vehicle.  After drugs were found in its trunk, Bagola and Tkachenko were arrested and Mirandized.  Defendant Tkachenko subsequently gave statements to the officers.

4

**Grounds for Suppression**

Defendant Tkachenko contends that Officer Coffman unreasonably delayed his completion of the warning ticket and the closure of the traffic stop in order to permit a drug dog team to respond to his call, constituting an unreasonable seizure in violation of the Fourth Amendment, citing *Illinois v. Caballes*, 802 N.E.2d 202 (2003), *cert. granted*, --- S.Ct. ----, 2004 WL 717187, 72 USLW 3451 (U.S.Ill. Apr 05, 2004).  She additionally contends that the statements police elicited from her following her illegal seizure were obtained as a direct result of and were the fruits of that illegal seizure, so must be suppressed.  *See Brown v. Illinois*, 422 U.S. 590 (1975).[2]

In her brief, defendant primarily relied upon the state court case of *Caballes,* which held that police may not conduct a canine sniff of a vehicle unless they have a reasonable, articulable suspicion that the car's occupants are possessing a controlled substance.  After defendant's brief was filed, the United States Supreme Court reversed and remanded that case.  *Illinois v. Caballes*, 543 U.S. __, 125 S.Ct. 834, 160 L.Ed.2d 842 (Jan. 24, 2005).  The Supreme Court held that where a lawful traffic stop was not extended beyond the time necessary to

---

[2]   No challenge is made to defendant Tkachenko's standing to raise these issues.

issue a warning ticket and to conduct ordinary inquiries incident to such a stop,

another officer's arrival at scene while the stop was in progress and the use of a

narcotics-detection dog to sniff around the exterior of motorist's vehicle did not

rise to level of cognizable infringement on the motorist's Fourth Amendment rights,

such as would have to be supported by some reasonable, articulable suspicion.  *Id.*

*Caballes* echoes the position of the Tenth Circuit, which has long held that police

do not need individualized suspicion of drug-related activity before subjecting an

otherwise lawfully detained vehicle to a canine sniff.  *See United States v.*

*Morales-Zamora*, 914 F.2d 200, 203 (10th Cir.1990).

       The Supreme Court noted that "a seizure that is justified solely by the

interest in issuing a warning ticket to the driver can become unlawful if it is

prolonged beyond the time reasonably required to complete that mission."

*Caballes*, 125 S.Ct. at 837.  At the evidentiary hearing, defendant narrowed its

contentions to this one - that the dog sniff was illegally conducted because

defendant was unlawfully detained beyond the time reasonably necessary to

complete tasks reasonably related to the reason for the initial stop of the vehicle.

       The government contends that since the drug dog alerted while the

traffic portion of the stop was still in progress, there is no reason to suppress.  *See*

*United States v. Williams*, 403 F.3d 1203, 1207 (10th Cir. 2005) ("A canine sniff

on the exterior of a vehicle during a lawful traffic stop does not implicate legitimate privacy interests," citing *Caballes*, 125 S.Ct. at 838, 160 L.Ed.2d 842 (2005)).  In the alternative, the government contends that Officer Coffman had reasonable suspicion as of the time the drug dog arrived, warranting any extension of the detention beyond the time related to traffic stop matters.  *See United States v. McNeill*, 2005 WL 1415567, *3 (10th Cir.2005) (finding "reasonable suspicion" permitted use of a drug dog to sniff the van, citing *Caballes*); *Williams*, 403 F.3d at 1207 (finding reasonable suspicion justifying a dog sniff commenced after traffic stop ended).

**General law**

A traffic stop is a seizure under the Fourth Amendment.  *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir.2003).  Routine traffic stops are analyzed under the investigative detention principles outlined in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir.1998). The reasonableness of a stop is a dual inquiry: (1) "whether the officer's action was justified at its inception," and (2) whether the officer's action "was reasonably related in scope to the circumstances that first justified the interference."  *United States v. Burch*, 153 F.3d 1140, 1141 (10th Cir.1998) (quotation omitted).

"Generally, an investigative detention must 'last no longer than is

necessary to effectuate the purpose of the stop.' " *United States v. Patten*, 183

F.3d 1190, 1193 (10th Cir.1999) (quoting *Florida v. Royer*, 460 U.S. 491, 500,

(1983)).  Its scope must be carefully tailored to its underlying justification.  *United*

*States v. Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir.1997), *cert. denied*, 523

U.S. 1035 (1998).  But, "an officer conducting a traffic stop may request vehicle

registration and a driver's license, run a computer check, ask about travel plans and

vehicle ownership, and issue a citation." *United States v. Zubia-Melendez*, 263

F.3d 1155, 1161 (10th Cir. 2001).  Upon issuing a citation or warning and

determining the validity of the driver's license and right to operate the vehicle, the

officer usually must allow the driver to proceed without further delay.  *United*

*States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir.1997).  A longer detention for

additional questioning is permissible if the officer has an objectively reasonable and

articulable suspicion that illegal activity has occurred or is occurring, or the initial

detention changes to a consensual encounter.  *Hunnicutt*, 135 F.3d at 1349.  The

government bears the burden to demonstrate that an investigative detention was

sufficiently limited in scope and duration, and, in the alternative, that the officer

possessed reasonable suspicion of criminal activity.  *See United States v. Holt*, 264

F.3d 1215 (10th Cir. 2001).

**Application**

8

The total duration of time from the initial traffic stop to the dog alert was approximately 16 minutes.  The time spent was reasonably necessary to converse with Bagola regarding his travel plans and right to lawfully operate the vehicle, and to accomplish ordinary tasks incident to this traffic stop.  It is reasonable for an officer to detain a motorist while completing a number of routine but somewhat time-consuming tasks such as those done by Officer Coffman. Performing these ordinary tasks would reasonably have taken longer than usual in this case because Bagola produced documents related to the vehicle showing multiple names other than his own, which the officer needed to investigate.  Any delay from the officer's waiting for the dispatcher's response to the officer's NCIC and III checks, and from his subsequent check on the seller's driver's license, was necessary to the officer's legitimate investigation to determine whether defendant was or was not the true owner of the vehicle he was driving, since the vehicle was registered to one person, insured in the name of another, and sold by yet another person, none of whom were the driver or the passenger in the vehicle.

Additionally, Officer Coffman testified that he did not intentionally delay any operations from the time he stopped the vehicle to the time the drug dog arrived for the purpose of permitting the dog to arrive during the traffic stop.  He stated that he called for the drug dog when he first returned to his patrol vehicle

after the initial contact with Bagola, and had no further communication with the

drug dog officer.  Although his testimony regarding the point in time at which he

began writing the warning ticket was not precise, he clearly stated that he completed

the warning ticket only after he received the information from defendant regarding

the seller of the vehicle.  That testimony is uncontradicted, credible, and fully

supported by the other evidence in the case.

Further, the court has reviewed the video tape of the stop.  The

questions asked by Officer Coffman during the first two contacts and the length of

time spent in conversations with Bagola related to the traffic stop and were routine.

The inquiries initiated by Officer Coffman through his dispatcher, NCIC, and III

were reasonably necessary to the performance of his duties relating to the traffic

stop.  Officer Coffman's final contact with Bagola to present him the warning ticket

was short, and their conversation related solely to the traffic stop.  No attempt to

prolong the stop is shown.

Although the arrival, sniff and alert of the drug dog and the officer's

presentation of the warning ticket to Bagola occurred simultaneously, the court

finds no evidence that the officers coordinated the events so that the ticket was not

signed until after the dog alerted.   Nothing in the record supports the contention

that the closure of the traffic stop should reasonably have occurred earlier than it

did.   Absent a dog sniff, the traffic stop would have taken the same amount of time.   Thus the court finds that the dog sniff in this case began and ended during the course of a lawful traffic stop, which was not unreasonably extended beyond the time reasonably required to complete that mission.

In the alternative, the court finds that in the event the traffic stop was extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to this traffic stop, the dog sniff was supported by reasonable suspicion.  The following factors formed a reasonable suspicion of criminal activity: 1) the vehicle Bagola was driving was not registered to him; 2) the proof of insurance Bagola produced was not in Bagola's name; 3) Bagola was unduly nervous; 4) defendant Tkachenko distanced herself from the officer; 5) Bagola gave three separate versions of their travel destination; 6) the paperwork evidencing the sale was not a standard sales contract, and reflected that the seller was not the driver of the vehicle, the registered owner of the vehicle, or the named insured for the vehicle.  These factors, coupled with Officer Coffman's credible testimony about his experience and his knowledge that defendants' acts were consistent with those of drug traffickers and not of the innocent motoring public, are sufficient to constitute reasonable suspicion, warranting the dog sniff.

11

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk.

15) is denied.

Dated this 15th day of September, 2005, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge